ACCEPTED
03-14-00131-CV
5531395
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/3/2015 2:57:57 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00131-CV

### THIRD COURT OF APPEALS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/5/2015 8:28:00 AM
JEFFREY D. KYLE
Clerk

### *ZBRANEK CUSTOM HOMES, LTD.*

**Appellant**

**v.**

### *JOE ALLBAUGH AND DIANE ALLBAUGH*

**Appellees**

### Appealed from the 419th Judicial District Court of Travis County, Texas

_____

### POST-SUBMISSION BRIEF
### OF APPELLANT ZBRANEK CUSTOM HOMES, LTD.

_____

David E. Chamberlain
Tim Poteet
Erin Westendorf-Boyd
CHAMBERLAIN ♦ McHANEY
301 Congress Avenue, 21st Floor
Austin, Texas   78701
(512) 474-9124
(512) 474-8582 (Facsimile)
dchamberlain@chmc-law.com
tpoteet@chmc-law.com
ewestendorf@chmc-law.com

**ATTORNEYS FOR APPELLANT**

i

# TABLE OF CONTENTS

Index of Authorities ..................................................................................... iii

Introduction ...................................................................................................1

Summary of Allbaughs' expert testimony ........................................................2

Texas Supreme Court's Analysis in
    *Gharda USA, Inc. v. Control Solutions, Inc*……………………………..3

Application of *Gharda* to this case ................................................................8

Certificate of Compliance ............................................................................. 11

Certificate of Service .................................................................................... 12

# INDEX OF AUTHORITIES

## Cases

*Gharda USA, Inc. v. Control Solutions, Inc.,*
   No. 12-0987 (Tex. May 8, 2015)............................................................. 1, 3-8, 10


*TXI Transp. Co. v. Hughes*
   306 S.W.3d 230 (Tex. 2010) ...............................................................................9

## Introduction

Appellant presents this supplemental post-submission brief because the Texas Supreme Court very recently published an opinion in *Gharda USA, Inc. v. Control Solutions, Inc.*, No. 12-0987 (Tex. May 8, 2015). *Gharda* was under review at the time of filing of Appellant's Reply Brief, as noted in page 7 of the Reply Brief. The *Gharda* opinion bears directly on one of the issues on appeal, namely:

> Whether any evidence of the cause of the fire, and the element of causation for negligence, is legally insufficient, or, alternatively, factually insufficient, when the Allbaughs' expert witnesses' theories of fire causation had an "analytical gap" due to lack of sufficient evidence of temperatures and heat transfer rates, and the experts did not eliminate potential alternative causes of the fire, including specifically electrical failure, among others.

In *Gharda,* the Texas Supreme Court ruled that expert testimony of several expert witnesses was improperly admitted where the testimony was interdependent and based on unreliable evidence. In this brief, Appellant will demonstrate that, just like the expert witnesses in *Gharda,* the Allbaughs' expert witnesses presented interdependent opinions at trial, based on unreliable opinions and testimony of other experts. Therefore, all of the Allbaughs' expert testimony was unreliable, and there was legally insufficient evidence of proximate cause, an essential element of the Allbaughs' claims. As discussed in Appellant's Brief, an expert's testimony must be reliable.

1

**Summary of Allbaughs' expert testimony**

The Allbaughs contended the fireplace construction had a gap in the stucco structure surrounding at the top of the firebox that left combustible material exposed above the firebox.[1]  However,  there was no evidence that any such gap existed before the fire. To the contrary, eyewitness testimony affirmed there was no gap in the fireplace as constructed.[2]

The Allbaughs' engineer expert, Paul Carper, questioned whether there was a gap in the stucco that left exposed OSB.[3]  The Allbaughs' fire cause and origin expert, Michael Chaney, testified that the same fire probably would have occurred that same evening whether or not there was a gap in the stucco that left OSB exposed, "given the heat source from a burning fire."[4]  Chaney assumed the fire started at a particular point, then reasoned backward to assume that the temperature at that location was sufficient to start the fire—a "reverse cognitive analysis" as he characterized it,[5] and an obvious logical fallacy.

The Allbaughs did not submit reliable or relevant evidence to support any of their theories of what actually caused the fire, nor did their experts rule out

---

[1] RR 7:200; RR 7:228; RR 7:243.
[2] RR 28:223 (Lackey Depo. p. 90, lines 3-9); RR 10:24, lines 6-8; RR 10:101, lines 3-8; RR 7:115, lines 2-4; RR 7:122, lines 12-19; RR 7:192, lines 6-8; RR 7:126, lines 4-25, RR 7:127, lines 1-2.
[3] RR 6:76-78.
[4] RR 7:37, lines 5-19.
[5] RR 7:16, lines 2-9.

alternative causes of the fire. Instead, the Allbaughs' experts offered only conjecture and speculation. They presented interdependent opinions that stacked unreliable opinions on top of one another. They performed no test or calculation, nor undertook any other type of reviewable, reliable analysis to support their hypotheses about the cause of this fire. In short, the Allbaughs' evidence of causation was legally insufficient.

### *Texas Supreme Court's Analysis in Gharda USA, Inc. v. Control Solutions, Inc.*

On May 8, 2015, the Texas Supreme Court published an opinion in a fire case with very similar issues regarding expert testimony, *Gharda USA, Inc. v. Control Solutions, Inc.*, No. 12-0987 (Tex. May 8, 2015). *Gharda USA* involved a fire in a warehouse that was used to formulate pesticides and insecticides. The formulation of these products required melting of a chemical called chlorpyrifos, manufactured by Gharda USA, in an industrial oven called a "hot box." Plaintiffs alleged that the fire was caused by contamination of chlorpyrifos in the manufacturing process, causing the chlorpyrifos to release chemicals in the hot box that spontaneously combusted.

Plaintiffs in *Gharda* presented numerous experts at trial in an effort to prove causation. First, they presented the Harris County Fire Marshal, Harold "Buddy" Rice, who was the first fire investigator on the scene. He performed two physical inspections of the scene, only, and performed no testing of any sort. He concluded,

3

based on burn patterns, that the fire originated in the hot box. He opined that some buildup of vapors in the hot box caused the fire. However, he admitted that he did not investigate and did not know what the vapor could have been or how it would have ignited.

Next, Plaintiff presented a retained fire origin investigator, Salvador "Sammy" Russo, who tested samples of gases from the burned drums of chlorpyrifos and opined that a volatile gas was present. Based on his investigation, he opined that an ignitable vapor in the hot box exploded and the ensuing fire spread throughout the warehouse. Like Rice, however, he could not testify as to what the vapor was, the source of the vapor, the quantity of the vapor, or whether the vapor could reach its flammability limit or an ignition source. Russo deferred to chemists on these issues.

Next, the Plaintiffs presented Dr. Armstrong, a chemist. He performed Russo's GC-MS testing of the gases and developed an ignition theory. He opined that several volatile gases were present in the burned drums. He began his search for an ignition theory with the assumption that Rice and Russo were correct in placing fire origin in the hot box. He ultimately opined that the chlorpyrifos was contaminated with a flammable substance called EDC, which caused a process called exothermic decomposition, which created vapors that spontaneously combusted or were ignited by static electricity. However, Armstrong never tested

4

nor could he testify as to the amount of EDC contamination that is required to cause exothermic decomposition, the amount of EDC contamination in the drums, the concentration of vapors that would have been necessary under his ignition theory, the temperature at which spontaneous combustion would occur, or how a static charge could develop in the hot box. Armstrong testified that he did not need to test his theory.

Further, Plaintiff presented another chemist named Dr. Cheremisinoff. He examined Gharda's manufacturing process and testified that it was "possible" that flaws in Gharda's manufacturing process resulted in EDC contamination, because Gharda used humans to distill the chemical rather than using a computer system to do so. He testified that drums contaminated with EDC could have exploded if a vapor cloud of 6% gas formed in the hot box. This theory was based on the assumption that the drums were sufficiently contaminated to reach that amount of vapor. He admitted that there was no evidence of the amount of any actual contamination of the drums.

In sum, Plaintiffs presented two fire experts who opined as to where the fire started (in the hot box), but who relied on other experts (Armstrong and Cheremisinoff) as to **how** the fire could have started there. Armstrong and Cheremisinoff assumed that the fire started in the hot box, and testified that EDC contamination **could** have started the fire. Armstrong assumed there was sufficient

5

EDC contamination to cause exothermic decomposition, but did no calculations, research, or tests to determine what a sufficient amount of contamination would be. Cheremisinoff testified that it was possible that Gharda's manufacturing process could have resulted in EDC contamination, but did not know the actual amount of EDC in the drums.

The Texas Supreme Court pointed out that "whether an expert's testimony is reliable is based on more than whether the expert's methodology satisfies the *Robinson* factors."[6] Reliable expert testimony must be based on a probability standard, rather than on mere possibility.[7] Expert testimony is unreliable "if there is too great an analytical gap between the data on which the expert relies and the opinion offered."[8]

The court was particularly critical of the opinion of Cheremisinoff, for a number of reasons, any of which "would be sufficient to support a conclusion that Cheremisinoff lacked a reliable foundation" on its own.[9] The court confirmed that expert testimony must be based on reasonable probability, not mere possibility.[10] The basis of his opinion was "the byproduct of possibilities."[11] Further, his opinion that the manufacturing process "could have" resulted in contamination was

---

[6] *Gharda*, p.14.
[7] *Gharda*, p.15.
[8] *Gharda*, p.15.
[9] *Gharda*, p.16.
[10] *Gharda*, p.16.
[11] *Gharda*, p.17.

speculation and did not establish that it did so in this case.[12]  He was unable to testify to the amount of actual contamination in the drums, but reasoned that there must have been a sufficient amount of contamination because there was an explosion, which the court found improper.[13]  The court found his testimony suffered from analytical gaps and was connected only by his own *ipse dixit.[14]*  He assumed facts that he was unable to determine.[15]

According to the Court, Armstrong's testimony suffered from the same deficiencies as Cheremisinoff.[16]  Armstrong was never able to quantify the amount of contamination in the drums.[17] Armstrong never tested nor could he testify as to the amount of EDC contamination that is required to cause exothermic decomposition, the amount of EDC contamination in the drums, the concentration of vapors that would have been necessary under his ignition theory, the temperature at which spontaneous combustion would occur, or how a static charge could develop in the hot box.[18] Without this information Armstrong had not even identified facts or factors consistent with his theory.[19]  Because the testimony of Armstrong and

---

[12] *Gharda*, p.17.
[13] *Gharda*, p.18.
[14] *Gharda*, p.18.
[15] *Gharda*, p.18-19.
[16] *Gharda*, p.19.
[17] *Gharda*, p.19.
[18] *Gharda*, p.20.
[19] *Gharda*, p.20.

Cheremisinoff was unreliable, then the testimony of Rice and Russo, which relied on their testimony, was likewise unreliable.[20]

**Application of *Gharda* to this case**

The expert testimony presented by Plaintiffs in both *Gharda* and the subject case is the same in its interdependent nature and contains the same flaws criticized by the Texas Supreme Court.

Like Armstrong and Cheremisinoff, one of the Allbaughs' experts, Michael Chaney, assumed a defect in the installation of the fireplace—a gap in the surrounding stucco structure that left combustible material exposed above the firebox—and then assumed that it caused the fire because there was a fire. Similar to Armstrong and Cheremisinoff, he did not test to find out what the actual temperatures were at the locations where he assumed the fire started or the rate of heat transfer from the firebox to the combustible material to prove that any alleged defect in the installation of the fireplace caused the damage to occur; consequently, there is no evidence that the temperatures were sufficient to cause a fire in the manner and at the location to which Chaney testified.

Chaney's testimony is strikingly similar to the flawed testimony of Armstrong. First, he began his causation analysis by making certain assumptions that had no basis. Chaney called this a "reverse cognitive analysis": "it's a kind of

---

[20] *Gharda*, p.21.

reverse concept in doing it that way, to arrive at the numbers that had to have been present to match all of the data that we got, the witness observations, the ignition sources in the area, the eliminations of those other potentials."[21] Like Armstrong, Chaney believed he did not need to do any type of testing of his theory, even though he admitted that heat conduction tests could be done, and would have been more reliable than his cognitive analysis.[22]

Like Cheremisinoff, another of the Allbaughs' experts, Paul Carper, could not testify that any gap or a false chimney probably existed between the stucco and the firebox, but only testified that it was possible.[23] Just like the expert evidence in *Gharda,* this conclusory testimony lacks objective, evidence-based support and merely assumes facts that are unable to be determined. The experts' testimony contains "analytical gaps," and expert testimony is unreliable when "there is simply too great an analytical gap between the data and the opinion proffered." *TXI Transp. Co. v. Hughes,* 306 S.W.3d 230, 239 (Tex. 2010).

Like the experts in *Gharda,* the Allbaughs' experts presented no facts or evidence to answer a crucial question raised by their theory of causation—how the material used to frame the fireplace OSB could have sufficiently heated to ignite or

---

[21] RR 7:20, lines 2-6.
[22] RR 7:21, lines 17-18; RR 7:23, lines 7-10; RR 7:71, line 23 to 72, line 6. Zbranek offered evidence of actual test results that disproved this "reverse cognitive analysis," but the Court erroneously refused to admit it. This is one of the points of error raised by Zbranek on appeal.
[23] RR6:152, line 20 to 153, line 7; RR6:160, lines 13-19; RR 6:76-78.

combust in the conditions present, the temperature the OSB heated to, and how it would have had enough available oxygen to ignite. Because the experts did not conduct any testing or calculations to support their theories, and did not present any reliable facts to support their theories, their opinions were subjective, conclusory, and are not entitled to probative weight.

There is one important difference between *Gharda* and the subject case, however. In *Gharda*, the electrical engineer expert testified that he had ruled out all electrical causes of the fire, and no party challenged that testimony.[24] Unlike *Gharda*, the Allbaughs' retained electrical engineer, Mark Goodson, specifically testified that he could not rule out an electrical failure as a cause.[25] The Allbaughs' other experts, who were not electrical engineers, deferred to Goodson's opinion on all electrical issues.[26]

In sum, just like the expert witnesses in *Gharda*, the Allbaughs' expert witnesses presented unreliable interdependent opinions at trial, based on unreliable opinions and testimony of others. Therefore, all of the Allbaughs' expert testimony was unreliable, and there was legally insufficient evidence of proximate cause, an essential element of the Allbaughs' claims.

---

[24] *Gharda,* p. 5.
[25] RR 4:62-3; RR 4:67, lines 21-4; RR 4:74-5.
[26] RR 5:117; RR 6:218.

**WHEREFORE, PREMISES CONSIDERED**, Appellant Zbranek Custom Homes, Ltd., respectfully asks the Court to review and reverse the judgment of the trial court, and render judgment that the Allbaughs and Chubb Insurance Company take nothing. In the alternative, the Court should reverse the judgment of the trial court and remand this case for a new trial on all issues. Appellant Zbranek Custom Homes, Ltd., respectfully prays for all other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,
CHAMBERLAIN ♦ McHANEY
301 Congress Avenue, 21st Floor
Austin, Texas   78701
(512) 474-9124
(512) 474-8582 (fax)
tpoteet@chamberlainmchaney.com
dchamberlain@chamberlainmchaney.com

By:   /s/ Tim Poteet
        TIM POTEET
        State Bar No. 16170300
        DAVID E. CHAMBERLAIN
        State Bar No. 04059800
**ATTORNEYS FOR APPELLANT**

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with typeface requirements of Tex. R. App. P. 9.4(e). It was prepared in a conventional typeface of 14-point for text and 12-point for footnotes. This document also complies with Tex. R. App. P. 9.4(i) (2)(B), (C) and contains 2,364 words, excepting the portions listed in Tex. R. App. P. 9.4(i)(1).

By:   /s/ Tim Poteet
        TIM POTEET
        State Bar No. 16170300

## CERTIFICATE OF SERVICE

I hereby certify by my signature below that a true and correct copy of the foregoing has been forwarded to counsel of record as indicated via Electronic Court Filing, this 3rd day of June, 2015:

Suzanne C. Radcliff
Cozen O'Connor
1717 Main Street, Suite 3400
Dallas, Texas 75201-7335
scradcliff@cozen.com

By: /s/ Tim Poteet
TIM POTEET
State Bar No. 16170300